JODY A. LANDRY, Bar No. 125743
jlandry@littler.com
LENA K. SIMS, Bar No. 212904
lsims@littler.com
LAUREN WOON, Bar No. 273208
lwoon@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
Telephone:  619.232.0441
Facsimile:   619.232.4302

Attorneys for Defendant
ECOLAB INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUG LADORE, an Individual, for himself and those similarly situated; MOES 1 Through 3000 and the Proposed Class, <br><br> Plaintiff, <br><br> v. <br><br> ECOLAB, INC., a Delaware Corporation; and DOES 1 Through 100, Inclusive, <br><br> Defendants. | Case No.  CV 11-9386 GAF (FMOx) <br><br> **DEFENDANT ECOLAB INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE HAZ/MAT EXEMPTION** <br><br>  DATE:  November 26, 2012 <br> TIME:   9:30 a.m. <br> Courtroom:  740 <br><br> Complaint Filed: October 7, 2011 |

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.  ARGUMENT ................................................................................................. 2

    A.   Class Counsel's Arguments Based Upon the Federal "Hours Of Service" Regulations Are Irrelevant ......................................................... 2

        1.   Class Counsel Bases Many Arguments On The First Alternative Haz/Mat Exemption Which Is Not At Issue In This Case ..................................................................................... 2

        2.   The California And Federal Regulations On Hours Of Service Are Not Identical ................................................................ 3

    B.   Ecolab's Use of the Haz/Mat Exemption Is Logically Connected To The Purpose Of The California Vehicle Regulations.......................... 4

    C.   The Haz/Mat Exemption Is Not Limited To Drivers Of "Commercial Motor Vehicles" ................................................................. 5

        1.   The Haz/Mat Exemption Applies To Drivers Of Any Vehicle Covered By Subchapter 6.5............................................... 5

        2.   Although Irrelevant, The Class Drives Commercial Vehicles....... 7

    D.   The Class Is "Actually Regulated" By The California Vehicle Code Hours Of Service Regulations ......................................................... 8

        1.   Under the Plain Language Of The Law, The California Hours of Service Provisions Apply To The Class.......................... 8

        2.   Ecolab Complies With The California Vehicle Code Hours Of Service Regulations That Apply To The Class, And Not Those that Do Not Apply.............................................................. 10

            a.   There Is No Law Or Logic That Requires Ecolab To Have A Written Hours Limitation Policy .......................... 10

            b.   Logbooks Are Not Required For the Class ....................... 11

    E.   The Class Carries Hazardous Materials In Their Trucks........................ 12

        1.   The Products Transported By The Class Are "Hazardous Materials".................................................................................... 12

        2.   Ecolab Does Not Rely On A One-Drop Rule............................... 15

        3.   ORM-Ds Are DOT Regulated Hazardous Materials.................... 16

        4.   A MSDS Is Not Legal Authority That A Product Is Or Is Not A Hazardous Material............................................................ 16

R MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
519.232.0441

i.

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

F.    Plaintiffs' Arguments That MOTS Are Not Hazardous Materials Is Not Supported By The Applicable Law .................................................... 17

     1.    The DOT Did Not Determine That MOTs Are Not Capable Of Posing An Unreasonable Risk; Rather They Determined That Due To The Training Of The Person Transporting Them That They Are Allowed To Be Subject To Less Onerous Shipping Regulations ...................................................... 18

     2.    Although Irrelevant, Plaintiffs' Position That A Driver Carrying MOTs Is Exempted From Federal HOS Regulations Is Wrong ................................................... 19

     3.    Drivers Carrying MOTs Are Not Excepted From The Requirements Of Title 13 Subchapter 6.5 .................................... 20

     4.    Plaintiffs' Argument That Vehicles That Transport MOTs Are Not Commercial Vehicles Is Irrelevant and Illogical ........... 21

         a.    MOTs Are Used For A Commercial Purpose ................... 22

         b.    Trucks Carrying MOTs Are Not Excluded From Subchapter 6.5 ................................................... 22

     5.    Plaintiffs' Interpretation Of The Regulations Is Illogical ............ 23

G.    California's Hours Of Service Laws Are Not Preempted By Federal Law ............................................................................ 23

III.    CONCLUSION .............................................................................. 25

MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
19.232.0441

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Carson Harbor Village, Ltd. v. Unocal Corp.*,
No. 96-cv-3281-MMM, 2003 U.S. Dist. LEXIS 14438, 2003 WL 22038700
(C.D. Cal. Aug. 8, 2003) ....................................................................................... 11

*In Re Boba*,
736 F. 2d 1317 (9th Cir. 1984) ............................................................................. 23

*In re Mark Indus.*,
751 F.2d 1219 (Fed. Cir. 1984) ........................................................................... 15

*Levinson v. Spector Motor Services*,
330 U.S. 649 (1947) ........................................................................................... 4, 5

*Maita Distribs. v. DBI Bev. Inc.*,
667 F. Supp. 2d 1140 (N.D. Cal. 2009) ............................................................... 23

*Rotec Indus. v. Mitsubishi Corp.*,
215 F.3d 1246 (Fed. Cir. 2000) ........................................................................... 15

*Smith v. Nat'l City Mortg.*,
2012 U.S. Dist. LEXIS 99879 (E.D. Cal. July 18, 2012) ..................................... 11

*Southern Pacific Transportation Co. v. Public Service Commission*,
909 F.2d 352 (9th Cir. 1990) .......................................................................... 23, 24

*The Chlorine Institute v. California Highway Patrol*,
29 F.3d 495 (9th Cir. 1994) ................................................................................. 24

*Watkins v. Ameripride*,
375 F.3d 821 (9th Cir. 1984) ................................................................................. 9

**STATUTES**

49 U.S.C. § 5102(2) .............................................................................................. 13

49 U.S.C. § 5103 .............................................................................. 13, 14, 16, 18

49 U.S.C. § 31132(1)(d) ......................................................................................... 3

& MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA  92101.3577
319.232.0441

iii.

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE(S)

49 U.S.C. § 1811(a) ............................................................................. 24

**REGULATIONS**

29 C.F.R. § 1910.1200(g) ...................................................................... 16

49 C.F.R. § 171.8 ................................................................. 14, 16, 22, 23

49 C.F.R. §§ 171.8, 172.101 .................................................................. 16

49 C.F.R. § 172.101 ................................................................... 14, 15, 16

49 C.F.R. § 172.101(a) .......................................................................... 14

49 C.F.R. § 173.6 ..................................................................... 16, 18, 19, 20

13 C.C.R. § 1160.1 .......................................................................... 20, 21

13 C.C.R. § 1200 ..........................................................................*passim*

13 C.C.R. § 1201(i)............................................................................ 5, 6

13 C.C.R. § 1201(h)............................................................................... 6

13 C.C.R. § 1212.5(a)(2) ........................................................................ 10

13 C.C.R. §§ 1212, 1212.5 and 1214 ....................................................... 4

13 C.C.R. § 1212(a)................................................................................. 5

**OTHER AUTHORITIES**

Wage Order 5.................................................................................*passim*

Wage Order 5 §(3)(I)(2) .................................................................. 5, 9, 25

Vehicle Code § 260 .............................................................................. 7

Vehicle Code §§ 353 and 2402.7............................................................ 12

R MENDELSON, P.C.
01 W. Broadway
Suite 900
ego, CA 92101.3577
619.232.0441

iv.

1

2

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE(S)

3  Vehicle Code § 410 ................................................................................................ 7

4  Vehicle Code § 15210(b).......................................................................................... 5

5

   Vehicle Code § 34500 ............................................................................................ 22

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

R MENDELSON, P.C.
J1 W. Broadway
Suite 900
go, CA 92101.3577
619.232.0441

v.

Defendant Ecolab Inc. ("Ecolab" or "Defendant") submits the following opposition to Plaintiffs' motion for partial summary judgment seeking a ruling that the Class is not covered by the Haz/Mat exemption set forth in section 3(I)(2) of Wage Order 5. For the reasons explained below Plaintiffs' motion must be denied.

## I.
## INTRODUCTION AND SUMMARY OF ARGUMENT

Ecolab correctly predicted that Class Counsel would attempt to make application of the Haz/Mat exemption complicated by twisting and torturing completely irrelevant provisions in various state and federal laws. Specifically, Class Counsel makes the following fallacious and irrelevant arguments, often without citing to any supporting legal authority:

- If the Federal "Hours of Service for Drivers" regulation do not apply to the Class, the California Haz/Mat exemption cannot apply, which is both irrelevant and wrong.

- If the Class Members do not drive a "commercial motor vehicle," the California Haz/Mat exemption cannot apply, which is irrelevant and wrong.

- Ecolab does not comply with applicable California hours of service rules, which is both irrelevant and wrong.

- Class Members do not transport hazardous materials (despite Plaintiffs' stipulations that establish such are transported), which is wrong.

- The driver safety provisions in subchapter 6.5 of the Vehicle Code Regulations do not apply to drivers who transport Materials of Trade, which is wrong.

- That the driver safety provisions in subchapter 6.5 of the Vehicle Code Regulations are preempted by federal law, which is wrong.

As is demonstrated below, and in Defendant's pending motion for summary judgment [Docket 42], the Haz/Mat exemption is applicable to the Class as they drive trucks that transport hazardous materials on each day that they work. Class Counsel's

R MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
319.232.0441

convoluted arguments to avoid application of the Haz/Mat exemption, are irrelevant, illogical, and contrary to the law.

## II.
## ARGUMENT

### A.     Class Counsel's Arguments Based Upon the Federal "Hours Of Service" Regulations Are Irrelevant.

Much of Class Counsel's motion is spent arguing why the "Hours of Service for Drivers" provisions under federal law, which Class Counsel refer to as the "U.S. HOS," do not apply to the Class.  Class Counsel further argues that the U.S. HOS regulations are "essentially identical" to the California Vehicle regulations; therefore if the U.S. HOS do not apply to the Class, the California Haz/Mat exemption does not apply to the Class.  This argument is meritless because (1) Ecolab does not claim that the Federal Motor Carrier "Hours of Service of Drivers" provisions apply to the Class; and (2) the Federal Motor Carrier and California Vehicle Code laws are not identical.

### 1.     Class Counsel Bases Many Arguments On The First Alternative Haz/Mat Exemption Which Is Not At Issue In This Case.

Section 3 of Wage Order 5, which applies to the Class, sets forth the Haz/Mat overtime exemption at issue.  As Class Counsel's memo explains there are two alternative exemptions.  The exemption applies if the employees' hours of service are regulated under federal law _or_ Title 13 of the California Code of Regulations ("C.C.R.").  The Wage Order provides:

> (I) The provisions of this section [Wage Order 5 overtime provisions] are not applicable to employees whose hours of service are regulated by:

> (1) The United States Department of Transportation Code of Federal Regulation, title 49, sections 395.1 to 395.13, Hours of Service of Drivers, **_or_**

> (2) Title 13 of the California Code of Regulations, subchapter 6.5, section 1200 and following sections, regulating hours or [_sic_] drivers.

The first alternative exemption is simply not at issue in this case.  Ecolab does not

I MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
519.232.0441

claim that the Class comes under the Code of Federal Regulation "Hours of Service of Drivers" provisions. Ecolab relies on the exemption in 3(I)(2) of the Wage Order that refers to the California Code of Regulations, subchapter 6.5, section 1200 and the following sections. Accordingly, Class Counsel's various "U.S. HOS" arguments lack logic and are irrelevant to the Court's decision.

### 2. The California And Federal Regulations On Hours Of Service Are Not Identical.

Class Counsel argues that the California Vehicle Code regulations are "essentially identical" to the Federal Motor Carrier regulations, and apparently believes this means federal law can be cited when it does not apply. Significantly, they do not state that the laws are completely identical. And they are not identical. For example, the Federal Motor Carrier law regulates vehicles that carry hazardous materials only if the vehicles are required to have placards. 49 U.S.C. § 31132(1)(d). The California regulations, on the other hand, specifically state that they apply to all trucks of less than 26,000 pounds that carry hazardous materials even if placards are not required. 13 C.C.R. § 1200(b).

Clearly, if the state of California wanted the Vehicle Code hours of service regulations to be identical to the Federal Motor Carrier regulations it would have adopted **no** regulation or it could have issued a directive to follow the federal regulations. To accept Class Counsel's argument would be tantamount to saying that California law has no effect simply because there is a similar federal law. Clearly, that is not true. California's wage and hour laws are just one example of a state law that is similar, but certainly not identical, to the federal law.

While there are similarities and connections between the Federal Motor Carrier law and the California Vehicle Code regulations, and significant to this case the California law specifically adopts the Federal definition of "hazardous material," these similarities and connections do not justify Class Counsel's repeated reliance "by extension" upon inapplicable federal law, as explained more fully below.

**B.   Ecolab's Use of the Haz/Mat Exemption Is Logically Connected To The Purpose Of The California Vehicle Regulations.**

Class Counsel argues that Ecolab cannot rely upon the Haz/Mat exemption because its use of the exemption is not "logically connected" to the purpose of the statute. Plaintiffs' motion, however, proves exactly the opposite is true. Ecolab's use of the Haz/Mat exemption logically furthers the California Vehicle Code regulations goal of highway safety.

Class Counsel correctly explains that a clear objective of the California Vehicle Code regulations is to "reduce excessively long work hours of truck drivers that increase fatigue." Plaintiffs' MPA, pp. 10-11. Ecolab agrees that the California Vehicle Code hours of service regulations that apply to Ecolab, i.e. 13 C.C.R. sections 1212, 1212.5 and 1214 (discussed in detail later), are drafted to achieve that goal. Ecolab's use of base salary and incentives to compensate the Class and reliance upon the Haz/Mat exemption from overtime pay is logically connected to that goal. Paying overtime to employees who carry hazardous materials on trucks will improperly incentivize them to work and drive long hours, despite safety conditions and fatigue. Ecolab's reliance on the Haz/Mat overtime exemption for the Class reduces the incentive of these employees to work and drive long hours. In contrast, accepting Plaintiffs' argument would motivate these employees, who work alone and create their own routes and schedules, to work dangerously long hours with the hope they will earn more daily overtime pay.

As discussed in Ecolab's Motion for Summary Judgment, the public policy rationale for removing overtime pay incentive for such employees is explained by the case of *Levinson v. Spector Motor Services*, 330 U.S. 649 (1947). In that decision, the United States Supreme Court reviewed why certain employees covered by the Federal Motor Carrier Act (which is not at issue here) are exempt from federal overtime pay requirements. The U.S. Supreme Court noted that the policy and goal of promoting highway safety could be threatened by paying overtime compensation to employees

: MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
19.232.0441

1   who work long hours. *Id.* at 657. The payment of overtime encourages employees to
2   drive longer hours, thereby defeating the goal of highway safety. Similarly, in the
3   interest of highway safety, the California Wage Order carves out an overtime
4   exemption for employees driving trucks carrying hazardous materials. Instead, these
5   employees' hours of service are regulated by the California vehicle safety regulations.

6   **C.   The Haz/Mat Exemption Is Not Limited To Drivers Of "Commercial
7   Motor Vehicles".**

8   Plaintiffs assert, without citing to any supporting legal authority, that the
9   Haz/Mat exemption only applies to drivers of "commercial motor vehicles." They
10  then argue that Specialists who do not drive "commercial motor vehicles," are not
11  commercial drivers and for that reason their hours are not regulated by subchapter 6.5.
12  Plaintiffs' MPA, pp. 20-21. Plaintiffs, once again, are wrong: (1) the exemption
13  applies to a driver of any vehicle covered by the subchapter; and (2) the Class drives
14  "commercial vehicles." As explained below, Plaintiffs' argument confuses the
15  definition of a "commercial motor vehicle" and a driver of a "commercial vehicle."

16  **1.   The Haz/Mat Exemption Applies To Drivers Of Any Vehicle
    Covered By Subchapter 6.5.**

17  The Haz/Mat exemption applies "to employees whose hours of service are
18  regulated by … Title 13 [C.C.R. § 1200 *et seq.*], regulating hours or [sic] <u>drivers</u>."
19  Wage Order 5 §(3)(I)(2) (emphasis added). California's regulations on Driver Hours
20  of Service provides that "[t]he rules in this section, unless otherwise specified, <u>apply</u>
21  <u>to all intrastate motor carriers and drivers</u>." 13 C.C.R. § 1212(a) (emphasis added).
22  The definition of "driver" in subchapter 6.5 is not limited to a driver of a "commercial
23  motor vehicle," which is defined as a motor vehicle for which the law requires a Class
24  A or B license, or a specially endorsed Class C license. Vehicle Code § 15210(b).
25  Rather a "driver" is defined as "<u>[a]ny person . . . who drives any motor vehicle subject</u>
26  <u>to this chapter. . ."</u> 13 C.C.R. § 1201(i) (emphasis added).

27  Plaintiffs argue that the definition of "driving time" in section 1201(k) is
28  somehow relevant. It is completely irrelevant as it only applies to individuals who

1 MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
319.232.0441

drive a "commercial motor vehicle", while the Haz/Mat exemption also applies to drivers who do <u>not</u> drive "commercial motor vehicles," such as the trucks driven by the Class.[1]   The relevant definition is set out in section 1201 (h), which defines the term "drive or operate" as "all time spent at the driving controls of a motor vehicle in operation." 13 C.C.R. § 1201(h).   Notably, this definition, just like the definition of "driver," is not limited to "commercial motor vehicles," it applies to all vehicles as defined in section 1200(a).

In addition, contrary to Plaintiffs' assertion, the plain definition of a "driver" (13 C.C.R. § 1201(i)) establishes that a "driver" is not limited to individuals who drive a vehicle for which placards are required.   Clearly California chose to regulate the hours of service of drivers of non-placarded vehicles that carry hazardous materials since it sets out specific hours of service rules that apply to drivers of non-placarded vehicles in 13 C.C.R. section 1200(b).   And certainly the government body that drafted the exemption in Wage Order 5 was aware of the provisions in subchapter 6.5 (cited in the Wage Order) when it crafted the exemption, and as such understood that a <u>driver</u> of a <u>vehicle</u>, as defined in said subchapter, would be overtime exempt.

If California desired to limit the exemption to drivers of "commercial motor vehicles" it could have easily inserted that language in the Wage Order and it would not have used the word "driver", without any qualification, in setting out the Haz/Mat exemption in 3(I)(2).   California used the word "driver" clearly knowing what provisions and definitions appeared in subchapter 6.5.   The plain language in the regulation establishes that the application of the Haz/Mat exemption is not limited to drivers of "commercial motor vehicles."

---

[1] For this reason many of the facts set forth in Plaintiffs' "Statement Of Facts" (Plaintiffs' Undisputed Facts 4, 5, 6, 7, and 8, set out on pages 4 and 5 of their brief) are irrelevant to the issues before the Court as those facts only relate to drivers of "commercial motor vehicles".   See Defendant Ecolab Inc.'s Evidentiary Objections To Plaintiffs' "Evidence" Submitted In Support Of Plaintiffs' Partial Motion For Summary Judgment ("Evidentiary Objections"), Objection Numbers 1-8.

R. MENDELSON, P.C.
01 W. Broadway
Suite 900
iego, CA 92101.3577
619.232.0441

### 2.   Although Irrelevant, The Class Drives Commercial Vehicles.

Further, Class Counsel's argument, based on an unauthenticated page of an incomplete document (Exhibit J to Gutierrez Declaration), that the Haz/Mat exemption is not applicable because the Class does not drive "commercial vehicles," again misuses the term "commercial motor vehicle" and inserts requirements in the law that do not exist.  The document purports to explain that the Vehicle Regulations at issue are intended, in part, to address an increase in "commercial truck accidents." Plaintiffs' MPA, p. 10.  This reference to the legislative intent does not support an argument that the regulations in subchapter 6.5 only apply to "commercial motor vehicles."  Plaintiffs fail to note for this Court that this exhibit refers to "commercial vehicles", which has a specific definition in the Vehicle Code, and makes no reference to "commercial motor vehicles."

California law also defines a "commercial vehicle" as a vehicle that is "designed, used, or maintained primarily for the transportation of property."  Vehicle Code § 260.  This language mirrors the definition of a "truck" which is defined as a "motor vehicle designed, used, or maintained primarily for the transportation of property.   Vehicle Code § 410.  And, although irrelevant because the Haz/Mat exemption is not even limited to "commercial vehicles," let alone "commercial motor vehicles," it is undisputed that the Class drives trucks that are registered and licensed by the state of California as "commercial vehicles."  Declaration Of Dale Mrozinski In Support Of Ecolab Inc.'s Opposition To Plaintiffs' Partial Motion For Summary Judgment ("Mrozinski Decl."), ¶ 2.  And, the Parties already stipulated that the Class drives trucks.  FS Nos. 19, 20, 52.

Therefore, the only logical conclusion, based on an application of Plaintiffs' irrelevant argument (i.e., that the Haz/Mat exemption only applies if the driver operates a "commercial vehicle") to the facts of this case, is that the Class is subject to the hours of service regulations set out in subchapter 6.5 because they drive "commercial vehicles".  Vehicle Code § 410; Mrozinski Decl., ¶ 2.

MENDELSON, P.C.<br>I. W. Broadway<br>Suite 900<br>jo, CA 92101.3577<br>19.232.0441

**D.    The Class Is "Actually Regulated" By The California Vehicle Code Hours Of Service Regulations.**

Plaintiffs also argue that the Haz/Mat exemption does not apply because the Class is not regulated.  Because there is no law that supports this argument, Class Counsel argues that Ecolab allegedly does not comply with the regulations and this "is evidence to suggest that its drivers are not actually regulated."  This argument erroneously confuses the issues of whether the regulations apply, with compliance with the regulations.  In fact, the law is clear - the California hours of service regulations apply to the Class.  Plaintiffs' arguments about Ecolab's alleged non-compliance are irrelevant to whether the California hours of service regulations apply.  Based on the undisputed facts, however, Ecolab does comply with the provisions of the California regulations that apply to the Class.  Plaintiffs' various arguments that Ecolab does not comply with provisions that do not apply to the Class, or do not even exist under the law, are simply red herrings.

**1.    Under the Plain Language Of The Law, The California Hours of Service Provisions Apply To The Class.**

Subchapter 6.5, which regulates driver safety, provides that "[u]nless otherwise indicated within a specific section, the provisions of this chapter shall apply to the vehicles listed in ... Vehicle Code sections ... 34500 ... and their operation.  13 C.C.R. § 1200(a).  Subpart (b) of that same section provides that sections "1212, 1212.5, 1214, 1215 (except for 1215(b)), 1229, 1230 and 1232" apply to "trucks with a gross vehicle weight rating of 26,000 pounds or less transporting hazardous materials in quantities for which placards are not required."  13 C.C.R. § 1200(b).  Based on the clear language in section 1200, the <u>hours</u> of a "<u>driver</u>" of a "<u>truck</u>" that weighs less than 26,000 pounds, that carries hazardous materials for which placarding requirements do not apply, are regulated.

The "hours" of "drivers" of vehicles covered by section 1200(b), which includes the Class, are regulated in the following ways:

I. MENDELSON, P.C.
1 W. Broadway
Suite 900
gc, CA  92101.3577
319.232.0441

- Section 1212, which is entitled "Driver Hours Of Service," sets forth driving hours rules for "<u>all</u> intrastate motor carriers and <u>drivers</u>."

- Section 1212.5(a)(2), establishes maximum driving limits for <u>all</u> "<u>Intrastate Truck Drivers</u>" prohibiting them from driving more than 12 cumulative hours without 10 consecutive hours off.

- Section 1214 prohibits a "<u>driver</u>" from operating a vehicle if the "<u>driver</u>'s ability is" impaired so as to make operation of the vehicle unsafe.

The plain language of the regulations makes it clear that the "hours" of the Class, individuals who drive trucks carrying hazardous materials on a daily basis (FS[2] Nos. 13, 14, 18, 19, 22, 24, 29, 36, 37, 47), are regulated.

Plaintiffs fail to cite to any legal authority that states that the hours of drivers of trucks covered by section 1200(b) of subchapter 6.5 are not "regulated" by that subchapter. No such law exists. In a transparent attempt to confuse the issue, Plaintiffs cite to the case of *Watkins v. Ameripride*, 375 F.3d 821 (9th Cir. 1984) to support their argument that the hours of service have to "actually be regulated." Plaintiffs' MPA, p. 7. In *Watkins* the Ninth Circuit reviewed a district court decision that found that Wage Order 9's exemption for employees whose hours of service are regulated by the United States Department of Transportation (not the Wage Order at issue or exemption relied on by Ecolab) could only <u>apply</u> to a driver engaged in interstate commerce. The Court determined that the employer did not meet its burden of proof to establish that the employee's hours were regulated by federal law. Since that Wage Order and exemption are not at issue in this case, *Watkins* provides no legal support for Plaintiffs' argument. However, as is fully demonstrated in Ecolab's motion for summary judgment [Docket No. 42], Ecolab has met its burden to establish that the Haz/Mat exemption in section 3(I)(2) Wage Order 5 applies to the Class.

---

[2] "FS" refers to the Factual Stipulations reached by the Parties that is attached as Exhibit 1 to the Declaration of Jody A. Landry in Support Of Defendant Ecolab Inc.'s Motion for Summary Judgment ("Landry Decl.").

I MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
119.232.0441

### 2. Ecolab Complies With The California Vehicle Code Hours Of Service Regulations That Apply To The Class, And Not Those that Do Not Apply.

Plaintiffs' motion argues that Ecolab "treated" the Class as if they are not regulated because Ecolab does not have a written policy that limits hours, and does not require the Class to maintain a logbook, materials manifests, or commercial drivers' licenses.[3] Plaintiffs appear to be arguing that if Ecolab simply "treated" the Class as if the Vehicle Code applies, the Haz/Mat exemption applies. Of course, that is ridiculous. The Haz/Mat exemption applies because based on the undisputed facts and plain language in the applicable law, the Class' hours of service are regulated under California law.

### a. There Is No Law Or Logic That Requires Ecolab To Have A Written Hours Limitation Policy.

Plaintiffs' argument that the Class' hours of service are not regulated by the California hours of service regulations because Ecolab does not have a written policy that sets a specific limit on drivers' hours is nonsense. There is no law that requires Ecolab to issue a written policy that sets a specific limit on hours. Moreover, based on the stipulated facts, it is clear such a written policy is not necessary based upon the reality of the Class' (drivers') work duties. The applicable regulation states that Ecolab cannot "permit" or "require" the Class to drive more than 12 cumulative hours without providing time off. 13 C.C.R. § 1212.5(a)(2). Driving more than 12 cumulative hours, however, is not a consideration for the Class. Indeed, the parties stipulated that the Class does not drive more than 8 hours in a day. FS No. 48.

Thus, Ecolab has done what needs to be done to comply with the hours of service regulation as it does not require or permit the Class to drive their trucks in violation of the driving hour limits applicable to them. Creating a policy that is not necessary and not based upon the reality of the Class' working conditions is not

---

[3] Although Plaintiffs mention manifests and commercial driver licenses, they provide not actual argument or legal authority in support of those statements. And, in any event their assertions lack merit as the regulations include no such requirements.

1 | required under the California Vehicle Code regulations.[4]

2 | **b.    Logbooks Are Not Required For the Class.**

3 | As discussed above, Plaintiffs rely on irrelevant federal law and an inadmissible

4 | declaration[5] to argue that Ecolab's failure to maintain logbooks required by federal

5 | law, (or state law if the driver operates a "commercial motor vehicle"), somehow

6 | makes the Haz/Mat exemption inapplicable. Class Counsel argues that "[a]s a matter

7 | of pure logic, individuals' hours that are not logged are not regulated" under the

8 | California Vehicle Code regulations. Plaintiffs' MPA, p. 11. There is no "pure logic"

9 | in Class Counsel's argument, which contradicts California law.

10 | The California Duty Status provisions specifically only apply to individuals

11 | who drive a "commercial motor vehicle" and the parties agree the Ecolab trucks the

12 | class drives do not come within that definition. As discussed in Ecolab's opening

13 | brief, and above, however, the California "hours of service" regulations, except

14 | section 1213, apply to drivers of "two-axle motor trucks with a gross vehicle weight

15 | rating of 26,000 or less transporting hazardous materials in quantities for which

16 | placards are not required . . .". 13 C.C.R. § 1200(b)(2).

17 | _____

18 | [4] Furthermore, even if Ecolab failed to comply with the applicable hours of service regulations (which is not true), such failure would mean that it violated the driver

19 | safety rules, not that the Haz/Mat exemption was not applicable.

20 | [5] The declaration, that is over six years old, is from a purported expert that Plaintiffs did not disclose in this matter pursuant to the provisions of Rule 26(a).  Declaration

21 | of Jody A. Landry In Support Of Defendant's Opposition To Plaintiffs' Partial Motion For Summary Judgment, ¶¶ 2, 3.  The case law is clear that the Court should not

22 | consider this declaration/expert report. "Excluding expert evidence as a sanction for

23 | failure to disclose expert witnesses in a timely fashion is automatic and mandatory unless the party can show the violation is either justified or harmless."  *Carson*

24 | *Harbor Village, Ltd. v. Unocal Corp.*, No. 96-cv-3281-MMM, 2003 U.S. Dist. LEXIS 14438, 2003 WL 22038700, at *2 (C.D. Cal. Aug. 8, 2003); *See e.g.*, *Smith v. Nat'l*

25 | *City Mortg.*, 2012 U.S. Dist. LEXIS 99879, at *6-7 (E.D. Cal. July 18, 2012)

26 | ("evident that plaintiff violated Rule 26(a)(2) by failing to include an expert report with either Plaintiff's Disclosure Document or the Plaintiff's Supporting

27 | Declaration").  See Evidentiary Objections, Objection Numbers 10-41, which further

28 | establish that this declaration lacks foundation, is irrelevant, and includes legal conclusions and improper opinions.

R MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
519.232.0441

11.

Plaintiffs' argument that because the Class does not keep logbooks their hours of service are not regulated by subchapter 6.5 is baseless. It clearly was the intent of California to regulate the hours of service of drivers who do not drive "commercial motor vehicles" and do not keep logbooks that track on duty time. Such drivers are not completely exempted from the hours of service regulations. Their hours of service are specifically regulated by sections 1212, 1212.5 and 1214.

Undisputedly, Ecolab trains its employees on safe driving, and not driving when tired and complies with the other applicable drivers' hours of service regulations under California law. Declaration of Kevin Oak In Support Of Ecolab's Motion For Summary Judgment, ¶¶ 2-6.[6] As such, Ecolab complies with the laws that apply to the Class, and arguments that it does not comply with provisions that do not apply must be disregarded as immaterial.

## E.   The Class Carries Hazardous Materials In Their Trucks.

As anticipated, Plaintiffs continue to rely on their "one-drop" argument (which they falsely attribute to Ecolab), asserting that hazardous materials that are classified an ORM-D (consumer commodities) are not hazardous and are not regulated. They further argue that a Material Safety Data Sheet (MSDS) is the applicable authority for determining whether or not a product is a DOT regulated hazardous material. The Court must reject these baseless arguments.

### 1.   The Products Transported By The Class Are "Hazardous Materials".

California law defers to the federal definition of what constitutes a "hazardous material." Vehicle Code §§ 353 and 2402.7 [the California commissioner shall adopt the hazardous material definitions "designated by the United States Department of

---

[6] Section 1215 prohibits a "driver" from operating a vehicle that is not "in safe operating condition," section 1229 relates to driver proficiency, section 1230 prohibits a carrier from operating a vehicle that is not safe, and relates to vehicle maintenance. Ecolab trains its drivers on safe operation of the vehicle, provides driving tests, prohibits driving vehicles that are unsafe and provides regular vehicle maintenance. Declaration of Kevin Oak In Support OF Ecolab's Opposition To Plaintiffs' Partial Motion For Summary Judgment, ¶¶ 2-6.

: MENDELSON, P.C
1 W. Broadway
Suite 900
go, CA 92101.3577
19.232.0441

1  Transportation ["DOT"] under Title 49 (commencing with Section 1801) of the

2  United States Code and Title 49 (commencing with Section 107) of the Code of

3  Federal Regulations relating to hazardous materials."]

4      The DOT defines a hazardous material as a substance or material the Secretary

5  designates under section 5103(a).  49 U.S.C. § 5102(2).  In 49 U.S.C. section 5103(a)

6  it provides that "[t]he Secretary shall designate material ... or a group or class of

7  material as hazardous when the Secretary determines that transporting the material in

8  commerce in a <u>particular amount and form **may** pose an unreasonable risk to health

9  and safety</u> or property." *Id.* § 5103(a) (emphasis supplied).  Based on this statute the

10  Secretary was to determine the "<u>particular amount and form</u>" of the material that

11  makes a material hazardous as it may pose an unreasonable risk when transported.

12  Plaintiffs' argument that the statutes and regulations only cover transportation that

13  poses an actual risk in transportation totally misconstrues the regulations and statutes.

14  The entire statutory scheme is meant to <u>prevent</u> an unreasonable risk from occurring.

15      The regulations issued by the Secretary that address this, which are discussed

16  below, are precisely what Ecolab relied on to perform its analysis of the products at

17  issue.  The DOT regulations, in compliance with this statute, set out the materials that

18  the Secretary designated as hazardous based on the <u>amount and form</u> of a particular

19  material being transported.   The applicable federal regulation issued through the

20  Secretary of Transportation explains as follows:

21      Hazardous material means a substance or material that the Secretary of

22      Transportation has determined is <u>capable</u> of posing an unreasonable risk

23      to health, safety, and property when transported in commerce, and has

24      designated as hazardous under section 5103 of Federal hazardous

25      materials transportation law (49 U.S.C. 5103).  <u>The term includes</u>

26      <u>hazardous substances, hazardous wastes, marine pollutants, elevated</u>

27      <u>temperature materials, materials designated as hazardous in the</u>

28      <u>Hazardous Materials Table (see 49 CFR 172.101), and materials that</u>

      <u>meet the defining criteria for hazard classes and divisions in part 173 of</u>

1    subchapter C of this chapter.

2    49 C.F.R. § 171.8 (emphasis added).[7]

3    In addition, the Secretary issued the referenced Hazardous Materials Table, set

4    out at 49 C.F.R. section 172.101, which lists multiple products/components that are

5    hazardous materials, including flammable gases and marine pollutants.   This

6    regulation specifically provides that "[t]he Hazardous Materials Table in this section

7    designates the materials listed therein as hazardous materials for the purpose of

8    transportation of those materials."  49 C.F.R. § 172.101(a) (emphasis supplied).  Thus,

9    the "Hazardous Materials Table" set forth in 49 C.F.R. section 172.101 lists materials

10   designated by the Secretary as hazardous pursuant to the authority stated in 49 U.S.C.

11   section 5103, because they are capable of posing an unreasonable risk.   Where

12   applicable, the Table states the *maximum* amounts that may be transported.  49 C.F.R.

13   § 172.101.   In addition, the Secretary established hazard class criteria that a final

14   product must meet in order for that product to be classified as a hazardous material.

15   49 C.F.R., part 173 of Subchapter C.  Those regulations, all read together, must be

16   applied to determine whether or not the product or material is a hazardous material.

17   The Parties stipulated that the Class transport Materials of Trade ("MOT"), as

18   defined in 49 C.F.R. section 171.8.  FS No. 47.  That section provides that a MOT is a

19   "hazardous material . . . carried on a motor vehicle . . . in direct support of a principal

20   business other than transportation. . ."  49 C.F.R. § 171.8.  The Parties thus stipulated

21   that the Class transports hazardous materials in their Ecolab vehicles.

22   Further, Ecolab demonstrated that all of the products set forth in the Parties'

23

24   [7] This same section provides that to determine if something is a "[f]lammable gas,"

25   see Section 173.115 of this subchapter.  And it sets out that a "Marine pollutant,
     means a material which is listed in appendix B to section 172.101 of this subchapter

26   (also see § 171.4) **and**, when in a solution or mixture of one or more marine
     pollutants, is packaged in a concentration which equals or exceeds:  (1) Ten percent

27   by weight of the solution or mixture for materials listed in the appendix; or (2) One
     percent by weight of the solution or mixture for materials that are identified as severe

28   marine pollutants in the appendix."

MENDELSON, P.C.
I W. Broadway
Suite 900
jo, CA 92101.3577
19.232.0441

14.

1    Factual Stipulation (FS Nos. 36 and 37) have been reviewed and determined by
2    Ecolab to be hazardous materials under the DOT regulations, including the applicable
3    classification criteria.   Declaration Of Michelle Gardner In Support Of Ecolab Inc.'s
4    Motion For Summary Judgment ("Gardner Decl."), ¶¶ 8, 13.   And Ecolab's
5    determination that the products at issue are hazardous materials has been confirmed by
6    a former high-level hazardous materials safety administrator of the DOT.   Landry
7    Decl., ¶ 7, Exh. 4 at ¶¶ 2-6, which is the Declaration of Frits Wybenga As Expert
8    Report ("Wybenga Decl.").

9           **2.     Ecolab Does Not Rely On A One-Drop Rule.**

10          Ecolab has fully demonstrated that the Class transports far more than one-drop
11   of hazardous materials in their Ecolab work truck.   Rather, they carry numerous
12   packages/containers of hazardous materials on a daily basis for the purpose of doing
13   their job. FS Nos., 36, 37; Ladore Depo., 51:4-8, 145:24-146:1; 146:15-18; 147:22-
14   148:4, 149:12-22, 151:19-152:2; Carbajal Depo., 92:3-7; 94:15-24.   Furthermore,
15   Ecolab demonstrated that it does not treat a material as hazardous just because it has a
16   "drop" of a product in it listed on the Hazardous Materials Table.   Rather, looking at
17   the Hazardous Materials Table at 49 C.F.R. section 172.101 is the starting point and
18   Ecolab then applies the applicable hazard class regulations to determine if the final
19   formulation of the product actually makes it hazardous.  Gardner Decl., ¶¶ 8, 13.

20          However, even if the Court believed, as argued by counsel, that the Haz/Mat
21   exemption could be misused, that does not mean that the Court can disregard
22   application of the exemption. *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1258
23   (Fed. Cir. 2000) ["This Court is empowered to rewrite neither statutes nor regulations,
24   however unwise, nor does it have the information base nor expertise to do so
25   effectively."]; *In re Mark Indus.*, 751 F.2d 1219, 1224 (Fed. Cir. 1984) ["A statute is
26   by definition the law to be followed--not disregarded, effectively repealed, rewritten
27   or overruled (unless unconstitutional)--in the federal courts."].

28

### 3. ORM-Ds Are DOT Regulated Hazardous Materials.

Class Counsel asserts, without citing to any supporting legal authority, that the materials the Specialists carry are not regulated hazardous materials as they are "ORM-D" (consumer commodity) [8] materials.  In fact, by definition, such materials are regulated by the DOT.  49 C.F.R. section 171.8 defines "ORM" as "*Other Regulated Material*", and in fact ORM-D is specifically listed as a hazardous material in the regulation on MOTs. 49 C.F.R. § 173.6 (emphasis added).  As such, Plaintiffs' argument is not supported by the applicable law.

### 4. A MSDS Is Not Legal Authority That A Product Is Or Is Not A Hazardous Material.

As anticipated, Class Counsel solely relies on the MSDS to support their argument that the products listed in Factual Stipulations 36 and 37 are not hazardous materials.  However, their reliance is misplaced.  A MSDS is not a determination by the DOT that a product is or is not a hazardous material or that the product is or is not regulated by the DOT.  Rather, a MSDS is a workplace communication required by the Occupational Safety and Health Administration.  29 C.F.R. § 1910.1200(g).  And, although some MSDS include optional transportation information, that information is not comprehensive for all modes or quantities of transport.  Gardner Decl., ¶ 12.  And the DOT has explained that the determination of what is a hazardous material is determined by its regulations, as issued through the Secretary of Transportation, not by a MSDS.  49 C.F.R. §§ 171.8, 172.101; 49 U.S.C. § 5103.

Furthermore, all of the MSDS for the flammable aerosols carried by the Class (FS No. 36) provide that they are DOT regulated for transportation.  As such, reliance on those MSDS actually supports Ecolab's position that said products are hazardous materials, and to the extent relevant, that they are regulated.

---

[8] "Consumer commodities" are listed as hazardous materials on the Hazardous Materials Table, and their hazard class is "ORM-D."  49 C.F.R. §172.101.

MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
19.232.0441

1    Put simply, Plaintiffs failed to submit any applicable legal authority or

2    admissible evidence to establish that the Class does not transport hazardous materials.

3    And, Plaintiffs stipulated that the class carries hazardous materials.  FS No. 47.

4    **F.    Plaintiffs' Arguments That MOTS Are Not Hazardous Materials Is Not
       Supported By The Applicable Law.**

5         Class Counsel makes numerous arguments that because the products carried by

6    the Class can be treated as MOTs, the products are not hazardous materials and the

7    Haz/Mat exemption does not apply.  In doing so Counsel makes suggestions about

8    what they believe the law should be and argues that "by extension" MOTs are not

9    hazardous materials.  As is more fully discussed below, Class Counsel's arguments

10   are wrong, and no applicable legal authority is cited to support their statement (on

11   page 17) that the DOT determined that MOTs are not capable of posing an

12   unreasonable risk to health and safety.

13        Plaintiffs also assert that the Haz/Mat exemption is not logically connected to

14   the purpose of the MOT exception.  Plaintiffs' MPA, p. 8.  This assertion is illogical

15   because the issue before the Court is not whether or not the Haz/Mat exemption is

16   "logically connected" to the federal MOT provisions.  The issue is whether or not the

17   requirements of the Haz/Mat exemption in 3(I)(2) have been met.  In making that

18   assertion, Plaintiffs twist what the Court stated in its Order.  The Court stated that it

19   did not believe a product was a regulated hazardous material if "an employee happens

20   to be driving around in a vehicle with [sic] carrying some small amount of a material

21   listed on a 'hazardous material table' in the CFR."  Order, p. 18.  The Court then

22   explained that in order to be exempt under the Haz/Mat exemption that the employee

23   must transport a material "in an amount regulated by the Department of

24   Transportation."  Id. at p. 19.

25        As is demonstrated below, Counsel cites no law to support their flawed and

26   illogical arguments.

27

28

R MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
619.232.0441

17.

**1.  The DOT Did Not Determine That MOTs Are Not Capable Of Posing An Unreasonable Risk; Rather They Determined That Due To The Training Of The Person Transporting Them That They Are Allowed To Be Subject To Less Onerous Shipping Regulations.**

Although Plaintiffs specifically quote the law that states MOTs are "hazardous materials" (Plaintiffs' MPA, p. 12) they then directly, and indirectly, argue that MOTs are not hazardous materials because they are not "capable of posing an unreasonable risk to health, safety". Plaintiffs' MPA, pp. 17. As explained in Ecolab's' Motion for Summary Judgment, Plaintiffs totally misconstrue the MOT regulations.

The definition of an MOT states that it "is a hazardous material." That means the material was already determined, based on its "amount and form," to be capable of posing an unreasonable risk to health and safety (as it may pose an unreasonable risk when transported). 49 U.S.C. § 5103(a). In 1997 the DOT revised Part 171 of the shipping regulations for hazardous materials so that:

> all intrastate shippers and carriers comply with the Hazardous Materials Regulations (HMR) with certain exceptions. This action is necessary to comply with the amendments to the Federal hazardous materials transportation law mandating that DOT regulate the transportation of hazardous materials in intrastate commerce. The intended effect of this rule is to raise the level of safety in transportation by applying a uniform system of safety regulations to all hazardous materials transported in commerce. . .

Defendant's Request For Judicial Notice In Support Of Ecolab Inc.'s Motion For Summary Judgment ("RJN") Exh. 5, p. 1208 (Federal Register 1/8/97).

The DOT further explained that the proposed language in Section 173.6 (MOT shipping requirements) "were proposed to strike a balance between safety and the impact of full application of the HMR." *Id.* at p. 1209. And, it further noted that the exceptions to certain shipping requirements were allowed because individuals who carry MOTs "generally transport the same types of materials repeatedly. Through experience, they gain a basic knowledge of the hazardous material being transported."

MENDELSON, P.C.
I W. Broadway
Suite 900
ɔo, CA 92101.3577
19.232.0441

1 │ RJN, Exh. 5, p. 1210.

2 │ There is absolutely nothing in the Preamble or in the federal regulations that

3 │ states that MOTs are not hazardous materials or that MOTs are not regulated by the

4 │ DOT.  And, evidence that Plaintiffs presented (Gutierrez Decl., Exh. M) demonstrates

5 │ that the DOT does indeed regulate MOTS.   After explaining that MOTs are

6 │ "hazardous materials" the informational pamphlet includes a section entitled "What

7 │ are materials of trade and what <u>regulations</u> apply?"  *Id.*  In fact, a former high level

8 │ DOT deputy confirms that MOTs are hazardous materials that are regulated by the

9 │ DOT.[9]  Wybenga Decl., ¶ 7.  Furthermore, if the Secretary of Transportation had

10 │ determined that MOTs were not capable of posing an unreasonable risk to safety when

11 │ transported, it easily could have completely exempted MOTs from the hazardous

12 │ materials transportation regulations.   That did not occur because one reason for

13 │ amending Parts 171 and 173 of the hazardous material regulations was to regulate the

14 │ transportation of all hazardous materials in intrastate commerce.  That is why the DOT

15 │ issued specific transportation regulations for hazardous materials that qualify as

16 │ MOTs.  49 C.F.R. § 173.6.

### 2. Although Irrelevant, Plaintiffs' Position That A Driver Carrying MOTs Is Exempted From Federal HOS Regulations Is Wrong.

As discussed above, Ecolab is not relying on the first alternative Haz/Mat, overtime exemption in section 3(I)(1) of Wage Order 5.  So, Plaintiffs' lengthy and convoluted argument that drivers of MOTs are exempted from federal Hours of Service regulations is irrelevant.  Regardless, because Plaintiffs use this assertion to argue "by extension" that California's hours of service regulations do not apply to the

---

[9] MOTs are regulated in shipping as follows:  (1) the products "must be leak tight for liquids, shift proof for solids, and be securely closed, secured against shifting, and protected against damage"; (2) the products "must be packaged in the manufacturer's original packaging, or a packaging of equal or greater strength and integrity"; (3) the employees transporting a MOT "must be informed of the presence of the hazardous material (including whether the package contains a reportable quantity) and must be informed of the requirements of this section."  49 C.F.R. § 173.6 (b)(c).

R MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
519.232.0441

1   Class, Ecolab responds to Plaintiffs' meritless assertion that the MOT exceptions to
2   certain shipping requirements exclude interstate drivers carrying MOTs from the
3   federal hours of service requirements.  Plaintiffs' MPA, pp. 13-14.

4        In support of their argument, Plaintiffs cite to 49 C.F.R. section 173.6, which
5   provides that when "transported by motor vehicle in conformance with this section, a
6   material of trade . . . is not subject to any other requirements of <u>this subchapter</u> besides
7   those set forth or referenced in this section." *Id.* (emphasis supplied).  The term "this
8   subchapter" refers only to Part 173's subchapter on general shipping requirements.  It
9   does not exempt a driver from the applicable requirements of any other chapter or
10  subchapter, including Chapter 177 or the Motor Carrier Act.  Plaintiffs fail to cite to a
11  statute or case that supports this irrelevant and baseless argument.

### 3.   Drivers Carrying MOTs Are Not Excepted From The Requirements Of Title 13 Subchapter 6.5.

13       Plaintiffs argue that the provisions of 13 C.C.R. section 1160.1(c) except the
14  Class from the hours of service requirements in 13 C.C.R. subchapter 6.5 section 1200
15  *et seq.*  Plaintiffs' MPA, pp. 14-15.  Plaintiffs' reliance on this provision is misplaced
16  and is apparently intended to confuse the issues.  And, for the reasons set forth below,
17  Plaintiffs are wrong.

18       First, the plain language of the regulation clearly shows that Ecolab is not
19  excepted from the provisions of the general transportation regulations in subchapter
20  6.5 as it states that "the exceptions in this section shall only apply to the transportation
21  of hazardous materials by carriers when not directly subject to federal jurisdiction
22  pursuant to 49 CFR Part 171 (i.e., transporting hazardous materials in intrastate . . .
23  commerce [transported for a fee or used for commercial purposes])."  13 C.C.R. §
24  1160.1(b).  The Parties stipulated that the materials the Class transports in their Ecolab
25  truck are MOTs (which are hazardous materials under federal law and directly subject
26  to federal jurisdiction).  FS No.47.  As such, the exceptions under section 1160.1 do
27  not apply to Ecolab because the Parties agree that the products at issue (FS Nos. 36,

R MENDELSON, P.C.
)1 W. Broadway
Suite 900
ego, CA 92101.3577
619.232.0441

20.

37) are regulated by federal law.

Second, Section 1160.1(c) is not applicable because it only provides certain transportation exceptions to individuals transporting hazardous materials for a "non-commercial" reason or "personal use." Here, the Parties stipulated that the products are transported and used for a commercial reason since Ecolab, through the Class, performs a service for customers and is paid for that service. FS Nos. 1, 6, 13, 14, 18, 19, 22 and 39 ("Specialists carry the products in their Service Vehicle to directly support the principle business of pest elimination services.") Based on the Parties' stipulations it is clear that this exception does not apply as Ecolab is engaged in a commercial business and it transports hazardous materials in commercial vehicles to its customers' locations in the course of carrying out its business for compensation.

Finally, 13 C.C.R. section 1160.1(c), even if it was applicable, which it is not, does not preempt application of the safety provisions in subchapter 6.5. The language in 13 C.C.R. section 1160.1(c) is in Division 2, Chapter 6, Article 3 of the regulations. All references in section 1160.1 to coverage or exceptions relates to the provisions of "this article" (referencing Division 2, Chapter 6, Article 3), not an article in a different chapter of the regulations. 13 C.C.R. § 1160.1. And, the exceptions set out in section 1160.1 are only to certain shipping requirements in the article. There is no statement anywhere in section 1160.1 that the driver safety requirements in subchapter 6.5, which are in a different chapter and article, are not applicable if certain transportation exceptions apply.

For all the aforementioned reasons, Section 1160.1 does not except Ecolab from subchapter 6.5's hours of service regulations.

### 4. Plaintiffs' Argument That Vehicles That Transport MOTs Are Not Commercial Vehicles Is Irrelevant and Illogical.

Plaintiffs also boldly allege, without any supporting citation, that "Vehicles that transport [MOTs] are not commercial vehicles." Plaintiffs' MPA, p. 21. As discussed above, there is no requirement under subchapter 6.5 that the Class drive commercial

R MENDELSON, P.C.
)1 W. Broadway
Suite 900
ego, CA 92101.3577
619.232.0441

1   vehicles.  In fact, however, they do drive commercial vehicles, and nothing in the

2   MOT regulations changes that.  Plaintiffs' argument only seeks to confuse the issues

3   before the Court.

4             **a.    MOTs Are Used For A Commercial Purpose**.

5        Plaintiffs' argument that a vehicle that transports MOTs is not a "commercial

6   vehicle" is absurd.  The definition of a MOT that Ecolab relies on is the provision that

7   the "hazardous material is carried . . . in direct support of a principal business."

8   49 C.F.R. § 171.8.  Plaintiffs stipulated to this.  FS No. 39.  As such, MOTs are

9   clearly used for a commercial purpose and vehicles transporting materials to support a

10  business are certainly "commercial".  And, as is discussed earlier, the vehicles used by

11  the Class are licensed and registered as commercial vehicles.  Mrozinski Decl., ¶ 2.

12            **b.    Trucks Carrying MOTs Are Not Excluded From Subchapter**
                      **6.5**.
13

14       As discussed above, the plain language of the regulation provides that

15  subchapter 6.5 applies to <u>all vehicles</u> listed in section "34500 . . . and their operation."

16  13 C.C.R. § 1200(a).   In turn, Vehicle Code section 34500 provides that "the

    department shall regulate the safe operation of the following vehicles . . . (g) A truck
17
    . . . transporting hazardous materials."  That section does not exclude trucks carrying
18
    MOTs, which by definition are hazardous materials.  Subpart (b) of section 1200
19
    provides lesser regulation of the hours of service for drivers of vehicles that transport
20
    hazardous materials, if they weigh less than 26,000 pounds and do not have to be
21
    placarded.  13 C.C.R. § 1200(b).
22

23       Based on the clear and unambiguous language of this regulation (13 C.C.R. §

    1200(b)(2)), the Specialists' trucks, which weigh less than 26,000 pounds and are not
24
    placarded, are covered by many of the provisions of subchapter 6.5.  This means that
25
    the "hours of service" of such drivers "are regulated" by the subchapter, thereby
26
    making the drivers of such vehicles overtime exempt.  FS No. 49.  This regulation
27
    includes no language that completely excludes from the hours of service rules drivers
28

: MENDELSON, P.C.
1 W. Broadway
Suite 900
go, CA 92101.3577
19.232.0441

22.

1  who only carry MOTs.

2  **5.  Plaintiffs' Interpretation Of The Regulations Is Illogical**.

3  Plaintiffs argue that a finding that "subchapter 6.5 regulates the hours of service

4  of persons transporting MOTs would require a strained, illogical reading of the state

5  and interconnected federal regulatory framework." Plaintiffs' MPA, p. 15. However,

6  the exact opposite is true.  A finding that subchapter 6.5 does not apply to drivers of

7  vehicles transporting MOTs, which by definition are hazardous materials (49 C.F.R.

8  section 171.8), would require an "illogical" reading of the Haz/Mat exemption. It

9  would require this Court to completely ignore the definition of "driver" in subchapter

10  6.5, as well as the definition of what "vehicles" are covered by said subchapter.  In

11  addition it would add requirements that do not exist in the exemption (i.e., that the

12  driver must transport hazardous materials that exceed the MOT limits and/or that the

13  driver must drive a "commercial motor vehicle").  In interpreting the regulations the

14  Court cannot omit provisions in the regulation or add requirements that do not exist in

15  the plain language of the regulation. *Maita Distribs. v. DBI Bev. Inc.*, 667 F. Supp. 2d

16  1140, 1144-45 (N.D. Cal. 2009); *In Re Boba*, 736 F. 2d 1317, 1320 (9th Cir. 1984).

17  **G.  California's Hours Of Service Laws Are Not Preempted By Federal Law.**

18  Plaintiffs' final desperate argument to avoid application of the Haz/Mat

19  exemption is that if subchapter 6.5 actually applied to drivers who carried MOTs that

20  the state law would be preempted.  Plaintiffs' MPA, pp. 22-23.  But federal

21  preemption cannot be implicated where the state law does not contradict the federal

22  law.  There is no inconsistency between allowing relaxed regulation for hazardous

23  materials that are carried in limited quantities by drivers who are familiar and trained

24  to address the hazards they pose, and the safety goals furthered by Haz/Mat

25  exemption.  Moreover, a review of the two cases relied upon by Plaintiffs do not

26  support Plaintiffs' argument as they discuss preemption of conflicting shipping and

27  packaging requirements for hazardous materials, not preemption of driver safety rules.

28  In *Southern Pacific Transportation Co. v. Public Service Commission*, 909 F.2d

MENDELSON, P.C.
W. Broadway
Suite 900
go, CA 92101.3577
519.232.0441

23.

1   352 (9th Cir. 1990), the Ninth Circuit reviewed a district court order granting
2   summary judgment for the Nevada Public Service Commission ("PSC").   The
3   appellant argued that "PSC regulations requiring rail carrier to obtain an annual permit
4   prior to loading . . . hazardous material . . . within the state are preempted by the
5   Hazardous Materials Transportation Act ["HMTA"] and the Federal Railway Safety
6   Act." *Id.* at 353.  In reversing, the Court explained that Congress enacted the HMTA
7   to provide a "scheme of uniform, national regulations." *Id.*

8        The Ninth Circuit further explained that pursuant to its authority the DOT in
9   turn "enacted a series of comprehensive regulations governing the transportation of
10  hazardous materials . . . 49 C.F.R. pts. 171-179 ('HMR')". *Id.* at 354.  The Court then
11  explained that the HMTA:

12       expressly preempts state or local regulations inconsistent with federal
13       law:  "(a) Except as provided in subsection (b) of this section, any
14       requirement, of a state of political subdivision thereof, which is
15       inconsistent with any requirement set forth in this chapter, or in a
16       regulation issued under this chapter, is preempted."  49 U.S.C. § 1811(a).
17       Such regulations are 'inconsistent" when (1) compliance with both the
18       state or local law regulation and the HMTA or DOT regulation is
19       impossible, or (2) the state or local regulation is an obstacle to the
         accomplishment and execution of the HMTA or DOT Regulation.

20  *Id.* at 355.  There is a similar discussion about preemption in the case of *The Chlorine*
21  *Institute v. California Highway Patrol*, 29 F.3d 495, 498 (9th Cir. 1994) [wherein the
22  Court concluded that a CHP regulation was preempted as it "promulgated regulations
23  that impose substantial shipping requirements in additional to those imposed under the
24  federal regulations . . . ."].

25       These cases demonstrate that the courts were reviewing requirements in 49
26  C.F.R. parts 171-179, which set out packaging and shipping requirements for
27  hazardous materials that were inconsistent with the federal law.  These sections do not
28  set driving hour rules or limits for individuals who drive vehicles that transport

R MENDELSON, P.C.
11 W. Broadway
Suite 900
ago, CA 92101.3577
619.232.0441

hazardous materials. As such, the HMTA does not preempt California's driver safety regulations in subchapter 6.5.

### III.
### CONCLUSION

For the aforementioned reasons, the Court should not be distracted by Plaintiffs' myriad of references to irrelevant statutory and federal authorities, and by Plaintiffs' creation of purported requirements under the Haz/Mat exemption that do not truly exist. Based on the above, Ecolab has established that Plaintiffs' motion must be denied as the arguments and authorities cited by Plaintiffs fail to establish that the Haz/Mat exemption is not applicable to the Class. Accordingly, Ecolab respectfully requests this Court deny Plaintiffs' motion for partial summary judgment.

In addition, the Court should grant Ecolab's cross-motion for summary judgment on the Haz/Mat exemption because Ecolab has established that all of the requirements of the Haz/Mat overtime exemption in section 3(I)(2) are met and cover the Class. The undisputed evidence establishes that: (1) each Class member drives a two-axle truck each day that they carry out their job duties as Specialists (FS Nos. 18, 19, 20, 23, 29, and 52); and (2) each day they transport products on their work truck that are classified as hazardous materials pursuant to the applicable regulations (FS Nos. 36, 37, 47; Gardner Decl., ¶ 13; Wybenga Decl., ¶¶ 2-7). As such, the Specialists' hours of service are regulated by subchapter 6.5 of Title 13 of the California Code of Regulations, which exempts the Specialists from California's overtime pay requirements.

Dated:   November 5, 2012                  Respectfully submitted,


                                          /s/ Jody A. Landry
                                          Jody A. Landry
                                          LITTLER MENDELSON, P.C.
                                          A Professional Corporation
                                          Attorneys for Defendant
                                          ECOLAB INC.

Firmwide:115847480.1 057118.1114

R MENDELSON, P.C.
H W. Broadway
Suite 900
ago, CA 92101.3577
619.232.0441

25.