LINK: 42, 43, 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:** (In Chambers)

## ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

### I.
### INTRODUCTION

This is a putative wage and hour class action brought by Plaintiff Doug Ladore on behalf of Ecolab, Inc. ("Ecolab") employees who provide pest extermination services at customer locations. The principal question to be resolved in this case is whether those employees are entitled to overtime pay.

Ecolab contends that California's overtime laws do not apply to these employees because, in the course of the performance of their duties as exterminators, they carry pesticides to customer locations in company-owned vehicles and are, therefore, subject to an exemption that applies to drivers of hazardous materials. Ecolab finds nominal support for its position in Wage Order No. 5, subsection 3(I)(2), which exempts from California's overtime laws "drivers" who transport such materials. In response, Plaintiff contends that class members' principle job duties deal with pest extermination and related customer-service tasks, that the transportation of the materials is incidental to these duties and that, in any event, they do not transport the materials in sufficient quantity to come within the hazardous materials regulations. This dispute requires the Court to determine whether the hazardous materials (Haz/Mat) exemption, which would seem to address safety concerns involving persons whose principle job responsibility is the transportation of such materials, applies to persons who must carry minimal quantities of these materials to their job site to perform the principal duties of their occupation. Stated somewhat differently, the Court must determine whether Ecolab's pest extermination specialists are "drivers" within

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

the meaning of the hazardous materials exemption. If they are "drivers", then the exemption applies and they are not entitled to overtime pay under California law; if they are not "drivers" then the exemption does not apply, and they are eligible to receive such pay. The parties cross-move for summary judgment on this question.

In the discussion set forth below, the Court concludes, after examining the specific provisions of the transportation regulations that are the subject of the Haz/Mat exemption, that the exemption properly construed would apply only to those employees for whom driving is their principal job duty. To give it broader application does not substantially advance the public safety objectives of the exemption but does substantially undermine the public policy imposing an obligation on employers to adequately compensate employees for overtime worked on the employer's behalf. In short, application of the regulations in this case would deprive Plaintiffs of their rights under the California Labor Code without conferring any regulatory benefit on the public at large, and would threaten to undermine California's overtime laws for employees for whom those laws were clearly intended. On the undisputed facts presented by the parties and other facts that are without substantial controversy, the Court **DENIES** Ecolab's motion and **GRANTS** Ladore's motion.

## II.
## FACTS

The undisputed facts and those without substantial controversy are not complex.

Ladore and fellow class members worked for Ecolab in its Pest Elimination Division as Pest Elimination Service Specialists ("PESS") and Senior PESSs.[1] Ecolab provided class members with training, which included education on the characteristics of the "Materials of Trade" discussed below and the safe handling and use of all products used to carry out their job duties. (Docket No. 42-3, [Declaration of Jody A. Landry ("Landry Decl.")], Ex. 1, [Stipulated Facts ("SF")] ¶¶ 9, 40, 45; Docket 42-5, [Declaration of Kevin Oak ("Oak Decl.")] ¶ 3.) To qualify to work as a PESS or Senior PESS, all class members were required to obtain and maintain a California applicator's license through the appropriate state agency. (SF ¶ 8.)

---

[1] On September 25, 2012, Antonio Carbajal was added as a co-class representative and the class was amended to include Select Segment Specialists. (Docket No. 41, [Amended Class Definition] ¶¶ 1-2.) For the purposes of this case, Select Segment Specialists "performed similar duties and had similar responsibilities as the Pest Elimination Service Specialists and Senior Pest Elimination Service Specialists" and would be subject to the same defenses Ecolab asserted. (Id. ¶ 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

    Once ready to perform their duties, class members, working alone without supervision, were assigned responsibility for maintaining communication and business relationships with a group of customers in a territory. (SF ¶¶ 11, 12, 28, 29.) Class members' duties included the prevention and extermination of insects, rodents and other pests at customer locations through various means including the use of insecticides, rodenticides, aerosols and fumigants. (Id. ¶¶ 1, 2.) Most customers who receive these services are commercial entities the vast majority of which are in the hospitality, restaurant and food business. (SF ¶¶ 4, 5.) Because of the nature of these businesses, most class members perform their services at customer sites either before or after the customer's usual business hours. (Id. ¶ 17.)

    Class members work from home and visit multiple customer sites every day. (Docket No. 49, [Plaintiffs' Response to Defendant's Statement of Undisputed Facts ("P-SUF")] ¶ 3; see also SF ¶¶ 11-17.) With very limited exceptions not pertinent to the present motion, class members drive to customer locations in a "Service Vehicle" - a two-axle truck weighing less than 10,000 pounds provided by Ecolab. (Id. at UF 4; SF ¶¶ 19, 52..) In their Service Vehicles, class members carry a variety of pest elimination products, which at all times include at least one item from each of the following two groups of materials:

    – Purge III, SSI-50, Air Defense, Ultracide Flea and IGR, Stingray Wasp, and Horney Spray, Great Stuff Pro Foam or a fire extinguisher;

    – Demand CS, Pyrocide 100, Pyrocide 300, Suspend CS, Tempo SC, Termidor SC, Nyguard IGR concentrate, S.W.A.T. or Phantom.

(SF ¶¶ 36, 37.) These items constitute Materials of Trade ("MOTs") within the meaning of 49 C.F.R. § 171.8, which means that they are carried in direct support of a principal business that is other than transportation. (SF ¶ 8.) Although the Service Vehicles in which these materials were transported would require hazardous materials placards if the materials were present in sufficient quantities, (see Docket No. 42-4, [Declaration of Michelle Gardner ("Gardner Decl.")] ¶¶ 9-11), the Ecolab Service Vehicles did not display any such placards. (SF ¶ 53.) Likewise, no special driver's license was required to operate the Service Vehicles; class members were not required by Ecolab to hold a Class A, B or C California driver's license with a hazardous materials endorsement as a condition of employment. (Id. ¶¶ 53-54.)

    The Service Vehicles are the only means by which class members transport pest elimination materials to their customer locations. (Id. ¶ 24.) The materials used at customer sites were in most instances obtained from an Ecolab warehouse where the products were taken

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

from inventory and loaded into the Service Vehicle; a warehouse withdrawal/transfer form would be prepared to record the transaction. (Id. ¶¶ 26-27.)[2] Whenever a particular item was used at a customer site, the class member would electronically prepare a Customer Service Report ("CSR") that describes the type and amount of product used. (Id. ¶¶ 33-34.) Class members would ordinarily carry in their Service Vehicle products that appeared on a customer's CSR. (Id. ¶ 38.) The CSR is subsequently left with the customer at the end of the service visit. (Id. ¶ 35.)

Products carried in the Service Vehicles were maintained in the manufacturer's original packaging, or in containers of equivalent or greater strength and integrity. (Id. ¶ 41.) The packaging is marked with the material's common or shipping name, and each item is accompanied by a Materials Safety Data Sheet ("MSDS"). (Id. ¶¶ 42, 44.) The MSDS, among other things, describes and communicates the hazardous characteristics of the product to those who use it in the workplace. Because of the product quantities carried in the Service Vehicles, class members did not, and were not required to, carry hazardous materials manifests on their vehicles. (Id. ¶ 59.)

Class members received pay in the form of a base salary, commissions, and, for those at the Senior PESS level, a performance-based bonus; they do not receive overtime pay. (Id. ¶¶ 31-32.) Nonetheless, Ladore was often required to work overtime hours, regularly logging twelve (12) to fourteen (14) hours a day, as well as "Weekend Duty" every six to eight weeks, during which he was on-call and required to remain within his geographic area so that he could respond quickly to customer calls within his district. (Docket No. 12-5, [Declaration of Doug Ladore ("Ladore Decl.")] ¶ 8; Docket No. 46-4, [Defendant's Response to Plaintiffs' Statement of Undisputed Facts ("D-SUF")] ¶¶ 14-15.)[3] He brings suit to recover unpaid overtime both on his

---

[2] In addition to the materials used in the principle business of Ecolab, the Service Vehicles also carry two other items considered MOT: materials carried for the protection of the operator and passengers; and materials carried for the purpose of maintaining the safe operation of the Service Vehicle. (SF ¶ 62.)

[3] In prior state court class litigation, Brandan Helzer, Ecolab's Assistant Vice President and Regional Manager, testified that:

> Service specialists are given a set number of customers, which can fluctuate with new business and, of course, cancelled business. Their responsibility is to not only communicate with those customers on a consistent basis, as preset in their scope of service or contractual agreement, provide periodic pest elimination services at these locations, schedule services, schedule these periodic services with the customer, respond to any additional calls from the customer and maintain good relationships with these customers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

behalf and on behalf of members of a class of similarly situated employees.

### III.
### DISCUSSION

**A. LEGAL STANDARD**

The Court applies the usual summary judgment standard which asks whether (1) there is any genuine issue of material fact, and (2) if not, has either party shown that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Here the parties agree that the material facts are not in issue and that the issue for resolution can be decided as a matter of law. The Court must therefore determine whether or not, as a matter of law, the Haz/Mat exemption for drivers of hazardous materials applies to Ecolab's pest elimination specialists.

**B. THE HAZ/MAT EXEMPTION**

The California Industrial Welfare Commission's Wage Order No. 5-2001, which "appl[ies] to all persons employed in the public housekeeping industry whether paid on a time, piece rate, commission, or other basis," sets out overtime pay requirements for California non-exempt employees. 8 Cal. Code. Regs § 11050. The "public housekeeping industry" includes businesses that provide maintenance services to restaurants, nightclubs, taverns, bars, boarding houses, and similar establishments where food and beverages are sold. Id. § 11050(2)(P). The description of Ecolab's customer base and the services offered those customers fits within this definition. However, § 11050(3)(I), which creates an exemption to the general rule, provides that "[t]he provisions of this section are not applicable to employees whose hours of service are

---

(Docket No. 12-2, Declaration of Daniel Palay ("1st Palay Decl."), Ex. A [Deposition of Brandan Helzer] at 16:9–16:17.) Helzer confirms that "that [was] true for all pest control elimination specialists within the [relevant] time period . . . ." (Id. at 16:18–16:20.) He emphasized,

> It's important that our employees build business relationships and report with our customers. So from time to time we request that our associates visit the customers, in addition to just the monthly service, go and met maybe general managers or management levels that they don't commonly interact with to make sure that they know the property and are doing everything they need to do to retain it.

(Id. at 24:1-7.) These quotes alone certainly lend credence to the notion that the class members' duties far exceeded mere driving. Indeed, driving appears incidental to their jobs. (See also D-SUF ¶ 1.)

Case 2:11-cv-09386-FMO-JC Document 65 Filed 01/22/13 Page 6 of 13 Page ID #:2241

LINK: 42, 43, 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

regulated by:

> (1) The United States Department of Transportation Code of Federal Regulations, title 49, sections 395.1 to 395.13, Hours of Service of Drivers, or
> (2) Title 13 of the California Code of Regulations, subchapter 6.5, section 1200 and following sections, regulating hours of drivers."

Id. § 11050(3)(I); see also 8 Cal. Code Regs. § 11090(3)(L)(1). Ecolab argues that Title 13 controls because it applies to two-axle motor trucks with a gross weight of 26,000 pounds or less, which would include the vehicles at issue here, and the trucks carry hazardous materials. (Docket No. 42-1, [Ecolab's Mot. for Summary Judgment ("Ecolab Mem.")] at 1.) Ecolab's argument goes as follows: class members drive trucks, the content of the trucks includes hazardous materials, therefore the exemption applies.[4] Ecolab contends that no further analysis – and in particular no analysis of principal job duties – is appropriate, citing to a state trial court decision that reached that conclusion in another Ecolab case. (See generally id.)

The argument is premised on Ecolab's contention that, because the regulations are clear and unambiguous, class members' contention that the regulations require interpretation is factually wrong and legally impermissible. Accordingly, Ecolab asserts that the Court need only interpret the regulatory text literally to conclude that class members are exempt from the California Wage and Hour laws that require the payment of overtime wages. (Id. at 12.) This argument, though superficially appealing, ignores the distinct objectives of the two regulatory schemes and assumes that "drivers" obviously and literally applies to anyone who gets behind the wheel of a motor vehicle. But this proposition is not so obvious as Ecolab would have it. Indeed, common sense suggests that, based on the content of the regulations as well as the titles of the regulations, the regulations literally apply only to persons whose job is that of "driver", not merely one whose job requires driving ancillary or incidental to their work.

### 1. THE FEDERAL REGULATIONS

Although Ecolab argues that Title 13 of the California Code of Regulations applies, the Court begins with an analysis of the Federal Regulations mentioned in § 11050(3)(I) to

---

[4] The parties spill much ink in their briefs on the nature of the materials transported to customer locations. The Court does not address most of that discussion in this order for two reasons: first, the Court does not doubt that most of the relevant materials, even in the limited quantities carried on the Service Vehicles, fall within some definition of "hazardous;" and (2) the resolution of the cross-motions does not turn on the nature of the materials but rather the substance of the class members' principal job duties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

juxtapose the objectives of the federal and state regulatory schemes in that exemption. It is noteworthy that 49 C.F.R. §§ 395.1 et seq. are found in Subchapter B, Federal Motor Carrier ***Safety Regulations***, and that Part 395 is entitled "Hours of Service of Drivers." The regulations address issues and concerns that are of primary importance to common carriers and their employee-drivers, and expressly exempt from coverage a number of people who "drive" during their work such as certain "driver-salesperson[s]," certain drivers involved in "short-haul" operations, operators of "property carrying commercial motor vehicles not requiring a commercial driver's license," and delivery drivers who make local deliveries for retail businesses. (Id. § 395.1(c)(e)&(f)).

Not only are the DOT regulations replete with such limitations and exceptions, but, for whom they do apply, they also impose limits on the driver's driving time (49 C.F.R. § 395.3) and require the employers of those who work as drivers to control the number of hours worked and to maintain detailed information regarding the driver's work days and hours of driving time. (E.g., Id. §§ 395.3(b), 395.8(k) & (j), 395.13.) In short, the federal regulations, both through the title's literal description and by the regulatory content itself, indicate a principal purpose to promote safety by monitoring and regulating the operation of long-haul truck drivers who work irregular, and often long, hours. Plainly, Ecolab's pest elimination specialists do not perform such duties.

### 2. THE STATE REGULATIONS

Chapter 6.5 of the applicable California regulations have a similar focus. That chapter bears the title "Motor Carrier Safety" and cross references Vehicle Code § 34500 which is found in Division 14.8 titled "Safety Regulations." 13 Cal. Code Regs. § 1200 et seq.[5] Although Section 34500 appears principally directed toward large vehicles (subsection (a) includes three axle vehicles that weigh more than 10,000 pounds), Section 34500(g) applies to trucks "transporting hazardous materials." Even so, 13 Cal. Code Regs. § 1200(b)(2), indicates that the regulations have "limited application" application in circumstances such as those present in this case. It provides in pertinent part:

> (2) Two-axle motor trucks with a gross vehicle weight rating of 26,000 pounds or less transporting hazardous materials in quantities for which placards are not required shall be

---

[5] 13 Cal. Code Regs. § 1201(i), which purports to define "driver", provides little help because it defines driver as one "who drives a motor vehicle subject to this chapter . . . ." This circular definition essentially begs the question presented in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

subject to the following Sections of this chapter: 1212, 1212.5, 1214, 1215 (except 1215(b)), 1229, 1230, and 1232.

13 Cal. Code Regs. § 1200(b)(2). The stipulated facts establish that the Service Vehicles are not, and are not required to be, placarded. Thus, only a few of the requirements of the state regulatory scheme apply here, and a review of those sections demonstrates that Ecolab does not even comply with some of the few regulations that do apply here. The Court notes the following regarding the applicable regulations:

Section 1212: This section contains language taken directly from the federal regulations and describes a number of exceptions to coverage of the regulatory scheme including, among others, certain driver-salespersons and retail store delivery drivers.

Section 1212.5: This section imposes maximum driving time limits, *a regulatory requirement not imposed by Ecolab on class members*. (SF ¶¶ 56-58.)

Section 1214: This section establishes a requirement that the *motor carrier* shall not require or permit a driver to operate a motor vehicle when the driver is impaired through fatigue, illness or any other cause. *Ecolab does not monitor and maintains no record of the driving time, fatigue levels, or illness status of class members*. (Id.)

Section 1215 (not including 1215(b)): This section imposes requirements regarding maintenance of vehicles to assure safe operating condition. Among other things, the regulation requires that "every motor carrier" require drivers to prepare a written daily report regarding the condition of the Service Vehicle to include 11 different components or systems. *There is no evidence that Ecolab requires the preparation of these daily reports*.

Section 1229: "Motor carriers" are required to insure that its drivers are capable of safely operating the business' vehicles. The record contains information indicating that Ecolab meets this requirement. (See id. ¶¶ 9, 46.)

Sections 1230; 1232: These sections require Ecolab to insure that Service Vehicles used by class members are in safe operating condition and to maintain inspection and maintenance routines. *There is no evidence that Ecolab complies with these sections*.

Ecolab plainly wants to have its cake and eat it too. To the extent Ecolab believes the

Case 2:11-cv-09386-FMO-JC Document 65 Filed 01/22/13 Page 9 of 13 Page ID #:2244

LINK: 42, 43, 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

Haz/Mat exemption applies, it clearly feels no compulsion to abide by the regulations that would be applicable. In any event, read together, the federal and state regulations appear to have little to do with the work performed by class members. Rather, they address issues pertaining to those whose occupation is driving rather than those who must drive to a site as an incidental function to the principal duties of their occupation. The California Division of Labor Standards Enforcement ("DLSE") agrees.

### 3. THE DLSE INTERPRETATION

The Court reads the two regulatory schemes together, which address issues regarding motor carriers and their drivers, as essentially directed at the activities of persons (other than those expressly excepted from coverage) whose principal duties involve driving goods from one place to another on behalf of their employer. This interpretation is shared by the DLSE. The DLSE Enforcement Policies and Interpretation Manual § 50.9 deals expressly with issues concerning 13 Cal. Code Regs. § 1200 et seq., and notes that those provisions regulate the hours of drivers and, by their own terms, have "***limited application*** to two-axle trucks of 26,000 lbs. or less transporting hazardous materials." (Emphasis added.) The Manual notes the overtime exemption for drivers of such vehicles who "transport hazardous material" but further provides:

> The IWC exemption only applies to employees whose regular duty is that of a driver, not any other category of worker.

DLSE Manual § 50.9.2.1. Furthermore, it provides that, even persons properly characterized as "drivers" who do not operate a truck during the entire work day are "entitled to overtime premium compensation for all overtime hours worked performing duties other than driving during that day." (Id.)

Ecolab does not agree and has lodged with the Court a ruling in Roe v. Ecolab, Ventura County Superior Court Case No. CIV 233936 (Dec. 1, 2006) in which the judge rejected the DLSE Manual interpretation on the ground that it was not an interpretation but an impermissible regulation promulgated without compliance with the state's Administrative Procedures Act. (See Docket No. 42-7, [Ecolab's Request for Judicial Notice ("DRJN")], Ex. 1, at 6.) In support, the trial court cited Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal. 4th 557, 569-70 (1996). (Id.) To be certain, Tidewater holds that the DLSE is subject to the requirements of the APA but does not hold that the interpretation of a regulatory term, such as "driver," amounts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

to a regulation. The Court is not persuaded that the mere interpretation of the meaning of the ambiguous term "driver" is a regulation requiring compliance with the California APA. (See Tidewater, 14 Cal. 4th at 568-577.) However, that issue is largely besides the point. The Court must interpret the term "driver" to resolve the dispute before the Court and looks to a variety of sources including the DLSE, which provides insight into the view of the agency responsible for enforcing wage and hour laws. Thus, though the DLSE Manual may not be viewed as dispositive, the Court certainly finds it helpful in ruling that the term "driver" describes an occupation and not an activity that is incidental to an occupation.

Further, even though the Superior Court Judge refused to give deference to the DLSE interpretation, he did not conclude that it was wrong. Rather, the judge acknowledged that the exemption could be limited to persons for whom driving was their principal job responsibility, but indicated that he would not undertake the analysis necessary to address that issue. (RJN, Ex. 1, at 6.) But this Court has done that analysis. As the discussion above indicates, when one closely reviews the provisions of the state and federal transportation regulations they are filled with exceptions and limitations that reflect a recognition that, merely because one gets behind the wheel of a vehicle during work hours, one does not necessarily engage in regulated conduct. Given those limitations, the DLSE interpretation teaches that one does not, merely by piloting a vehicle from place to place even if it contains relatively small quantities of hazardous materials, forfeit his or her right to be paid overtime as required by California law. Even Ecolab tacitly recognizes the inapplicability of the transportation regulations by making no effort to comply with Sections 1212.5 and 1214, and offering no evidence as to compliance with Sections 1215, 1230, and 1232. Thus, Ecolab finds itself in the embarrassing position of insisting that the regulations are clear and unambiguous but without an explanation for why it has not complied with the critical elements of the regulatory scheme purporting to grant Ecolab its exemption. That scheme requires Ecolab to insure that their driving time does not violate the requirements of the federal and state regulations, to maintain close control over its drivers, and to maintain detailed records of vehicle maintenance.

**4. CASE LAW & PUBLIC POLICY**

There is little case law on the issue, and none that can be described as controlling. Wamboldt v. Safety-Kleen Systems, Inc., 2008 WL 728884 (N.D. Cal., March 17, 2008) dealt with a dispute with a defendant that provided industrial washing, industrial waste removal and recyling services to private companies and government entities. Defendant employed plaintiffs as customer service representatives, whose duties included customer sales, client collections, on-site servicing of equipment, telephone responsibilities, and transportation of hazardous waste.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

Defendant refused to pay overtime on the ground that plaintiffs were exempt from overtime pay under the Haz/Mat exemption. The trial court refused to grant defendant's motion for summary judgment because it found a material issue of fact regarding whether the exemption applied because the facts regarding the transportation of hazardous waste and materials were in dispute. The case does not squarely address the question now before this Court and plainly did not undertake a close analysis of the regulatory scheme to determine whether it could properly be applied to the customer service representatives whose driving, like the driving of the plaintiffs here, was incidental to their principal job responsibilities. The only other potentially relevant case, Gomez v. Lincare, Inc., 93 Cal. Rptr. 3d 388 (App. Ct. 2009), suffers from the same limitations.

      Because there is no controlling case that addresses the precise issue now before this Court, Ecolab also argues that its legal position serves the public interest by promoting safe operation of its vehicles. It even cites case law explaining the safety objective behind these and similar regulations. For example, Ecolab cites Levinson v. Spector Motor Service, 330 U.S. 649, 657 (1947), which notes the public safety component of the federal Motor Carrier Act. In that vein, Ecolab concludes its public safety line of argument as follows:

> Because they are salaried, the Specialists are encouraged to work and drive efficiently, and minimize their time on the road carrying hazardous materials. [SF] 31, 32. Simply put, providing an incentive to the Specialists to work overtime is contrary to the goal of vehicle safety.

(Ecolab Mem. at 14.) In support, Ecolab footnotes to English v. Ecolab, 2008 WL 878456 (S.D.N.Y. 2008),[6] which dealt with a different but purportedly similar regulatory exemption on the payment of overtime. However, Ecolab's assertion that it pays no overtime out of its desire to protect the public rather than to promote its economic self-interest does not ring true.

---

      [6] The language Ecolab chose to quote from this case suggests an economic rather than a safety-minded reason for Ecolab's refusal to pay overtime, as the following indicates:

> At present, service specialists, who work independently and without significant oversight, are given both time and financial incentives to perform their assignments quickly and efficiently. If the overtime requirement applied, however, this incentive would be lost. In the absence of direct supervision, service specialists could work as slowly as possible to generate hours in excess of forty per week.

(Ecolab Mem. at 14 n.10.) Thus, while Ecolab pays lip service to the public safety objectives of the relevant statutory schemes, it is clear that their primary concern is not safety but saving money.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

    The safety requirements established under the transportation regulations impose substantial obligations on the employer to insure safe operation of their drivers and their vehicles. These requirements are not furthered by the simple assertion that safe operation is assured by denying overtime pay to employees whose duties require that they drive to customer locations. As noted above, Ecolab has not complied with many of these requirements, on the apparent assumption that the requirements do not apply to it. On that subject, the parties stipulated facts contain the following statements:

>  54. For all purposes in this case, Ecolab does not require Specialists to have a Class A, Class B, or Class C California driver's license with a hazardous materials endorsement to drive their Service Vehicles.
>
>  55. For all purposes in this case, Service Vehicles driven by Specialists do not require a Class A, Class B or Class C California driver's license with a hazardous materials endorsement.
>
>  56. For all purposes in this case, Ecolab does not require Specialists to maintain logbooks tracking their On-Duty time or Driving Time while working for Ecolab (herein, "On-Duty and/or Driving Time" has the same definition as that set forth in 13 Cal. Code Regs.§ I20l(k) and (t)).
>
>  57. For all purposes in this case, Ecolab does not require Specialists to limit their Driving Time while working for Ecolab (herein "Driving Time" has the same definition as that set forth in 13 Cal. Code Regs. § 120l(k)).
>
>  58. For all purposes in this case, Ecolab does not require each Specialist to record his/her duty status for each 24-hour period using the methods prescribed in either paragraphs (a)(1) or (2) of 49 C.F.R.§ 395.8.
>
>  59. For all purposes in this case, Specialists do not carry hazardous materials manifests on their Service Vehicles.

(SF ¶¶ 54-59). It is abundantly clear that Ecolab has no idea how much time class members spend driving in a 24-hour period, nor does it particularly care. In the face of Ecolab's non-compliance with safety-related elements of the regulatory scheme, Ecolab cannot persuasively argue that its refusal to pay overtime arises from its concern over public safety or its belief that the pertinent regulations regarding hazardous materials actually applies to it. The Court finds

LINK: 42, 43, 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-9386 GAF (FMOx) | Date | January 22, 2013 |
|---|---|---|---|
| Title | Doug Ladore v. Ecolab Inc et al | | |

that this is because the common sense reading of the relevant regulatory scheme limits application of the Haz/Mat exemption to "drivers" whose primary duty is driving. The class members at issue do not fall within such a definition.

IV.
CONCLUSION

In short, the Court concludes that, when the regulations at the heart of the Haz/Mat exemption are closely scrutinized, the exemption is of much more limited application than first appears on the surface. To construe it as broadly as Ecolab suggests does not materially advance the public safety objectives of the exemption but does substantially undermine the public policy underlying the California wage and hour laws. Under Ecolab's approach, the loss to class members (and other potentially affected California workers in similar industries) is not balanced by a public safety gain to the public at large. On the undisputed facts presented by the Parties and other facts that are without substantial controversy, the Court **DENIES** Ecolab's motion and **GRANTS** Ladore's motion.

**IT IS SO ORDERED.**